# 15-       -cv

## In the United States Court of Appeals
## for the Second Circuit

PASHA S. ANWAR, ET AL.,

*Plaintiffs-Respondents,*

v.

FAIRFIELD GREENWICH LTD., ET AL.,

*Defendants.*

THE CITCO GROUP LTD., ET AL.,

*Defendants-Petitioners.*

## PETITION OF DEFENDANTS-PETITIONERS THE CITCO GROUP LTD., ET AL., FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

### VOLUME I of XII

From an Order Granting Certification of a Class Action
Entered on March 3, 2015,
by the United States District Court for the Southern District of New York
District Court Master File No. 09 Civ. 0118 (VM)
The Honorable Victor Marrero

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendants-Petitioners The Citco Group Ltd.,
Citco Fund Services (Europe) B.V., Citco (Canada) Inc.,
Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch,
and Citco Fund Services (Bermuda) Ltd.*

## Corporate Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, petitioners The Citco Group Limited, Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Limited hereby state that:

The Citco Group Limited is a wholly owned subsidiary of Citco III Limited. No publicly held corporation owns ten percent or more of The Citco Group Limited's stock.

Citco Fund Services (Europe) B.V. is a subsidiary of Citco Fund Services (London) Limited. No publicly held corporation owns ten percent or more of Citco Fund Services (Europe) B.V.'s stock.

Citco (Canada) Inc. is a subsidiary of Citco Fund Services (Nederland) B.V. No publicly held corporation owns ten percent or more of Citco (Canada) Inc.'s stock.

Citco Global Custody N.V. is a subsidiary of Citco Bank Nederland N.V. No publicly held corporation owns ten percent or more of Citco Global Custody N.V.'s stock.

Citco Bank Nederland N.V. Dublin Branch is a branch of Citco Bank Nederland N.V., which is a subsidiary of Citco Bank Holding N.V. No publicly

held corporation owns ten percent or more of the stock of Citco Bank Nederland N.V. Dublin Branch.

Citco Fund Services (Bermuda) Limited is a subsidiary of Citco Fund Services (Holdings) Limited.  No publicly held corporation owns ten percent or more of Citco Fund Services (Bermuda) Limited's stock.

# Table of Contents

**Page**

Corporate Disclosure Statement ................................................................i

Introduction ...................................................................................1

Questions Presented ............................................................................4

Proceedings Below..............................................................................4

Reasons for Granting the Petition .............................................................6

    I.    Common Issues Do Not Predominate Because Whether Each
Class Member Actually Relied on Citco's Alleged
Misrepresentations and Whether That Reliance Was Reasonable
Raise Individual Issues ...........................................................6

    II.   Because the Class's Federal Securities Claims Are Based Mainly
on Alleged Misrepresentations, *Affiliated Ute* Does Not Apply ...........13

    III.  This Action Is Not a "Superior" Method of Adjudicating the
Class's "Holder" Claims Because They Are Derivative in Nature .......14

    IV.  The Class's Theory of Liability as to Its Federal Securities
Claims Raises Individual Issues and thus Precludes Certification ........19

Conclusion ...................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Absolute Activist Value Master Fund Ltd.* v. *Ficeto*,
    677 F.3d 60 (2d Cir. 2012) ...................................................20

*Affiliated Ute Citizens* v. *United States*,
    406 U.S. 128 (1972)......................................................3, 13

*In re AIG, Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) ................................................7

*Amgen Inc.* v. *Conn. Ret. Plans & Trust Funds*,
    133 S.Ct. 1184 (2013)........................................................2

*Anwar* v. *Fairfield Greenwich Ltd.*,
    289 F.R.D. 105 (S.D.N.Y. 2013) ......................................15

*Anwar* v. *Fairfield Greenwich, Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010) ..............................15

*Anwar* v. *Fairfield Greenwich Ltd.,*
    884 F. Supp. 2d 92 (S.D.N.Y. 2012) ..........................18, 19

*Arbegast* v. *Bd. of Educ. of S. New Berlin Cent. Sch.*,
    480 N.E.2d 365 (N.Y. 1985)..............................................12

*Basic* v. *Levinson*,
    485 U.S. 224 (1988)............................................................6

*Benner* v. *Becton Dickinson & Co.*,
    214 F.R.D. 157 (S.D.N.Y. 2003) ......................................12

*Buckley* v. *Control Data Corp.*,
    923 F.2d 96 (8th Cir. 1991) ..............................................15

*Christensen* v. *Nauman*,
    2014 WL 7392916 (S.D.N.Y. Dec. 29, 2014) ...................19

*Churchill Fin. Cayman, Ltd.* v. *BNP Paribas*,
  944 N.Y.S.2d 116 (App. Div. 2012)....................................................................7

*City P'ship Co.* v. *Jones Intercable, Inc.*,
  213 F.R.D. 576 (D. Colo. 2002) ......................................................................15

*Elendow Fund, LLC* v. *Rye Inv. Mgmt.*,
  588 F. App'x 27 (2d Cir. 2014) ....................................................................18, 19

*Starr ex rel Estate of Sampson* v. *Georgeson S'holder, Inc.*,
  412 F.3d 103 (2d Cir. 2005) ..........................................................................13

*Farrie* v. *Charles Town Races, Inc.*,
  901 F. Supp. 1101 (N.D. W. Va. 1995) .........................................................15

*Feldman* v. *Cutaia*,
  951 A.2d 727 (Del. 2008) ..............................................................................17

*In re Fosamax Prods. Liab. Litig.*,
  248 F.R.D. 389 (S.D.N.Y. 2008) ...................................................................12

*Goodman* v. *Genworth Fin. Wealth Mgmt., Inc.*,
  300 F.R.D. 90 (E.D.N.Y. 2014) ................................................................11, 14

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014)....................................................................................7

*Hevesi* v. *Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ..............................................................................6

*Hydro Investors, Inc.* v. *Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ................................................................................6

*Johnson* v. *Nextel Commc'ns Inc.*,
  2015 WL 897653 (2d Cir. Mar. 4, 2015).......................................................12

*Krys* v. *Sugrue (In re Refco Inc. Sec. Litig.)*,
  2010 U.S. Dist. LEXIS 33642 (S.D.N.Y. Mar. 1, 2010)..................................16

*Laub* v. *Fasessel*,
  745 N.Y.S.2d 534 (App. Div. 2002)................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
 2013 WL 5730020 (S.D.N.Y. Oct. 22, 2013)...............................................13, 14

*Lumbermens Mut. Cas. Co.* v. *Franey Muha Alliant Ins. Servs.*,
 388 F. Supp. 2d 292 (S.D.N.Y. 2005) .................................................................7

*Morrison* v. *National Australia Bank Ltd.*,
 561 U.S. 247 (2010).................................................................................4, 6, 19

*In re Nat'l Century Fin. Enter. Litig.*,
 846 F. Supp. 2d 828 (S.D. Ohio 2012) ............................................................10

*Newman* v. *Family Mgmt. Corp.*,
 530 F. App'x 21 (2d Cir. 2013), (S.D.N.Y. 2010) .....................................16, 18

*Prickett* v. *New York Life Ins. Co.*, 896 F. Supp. 2d 236 (S.D.N.Y. 2012) .............16

*In re Optimal U.S. Litig.*,
 813 F. Supp. 2d 351 (S.D.N.Y. 2011), *modified on reconsideration,* 813
 F. Supp. 2d 383 (S.D.N.Y. 2011) ...............................................................16, 18

*In re Rezulin Prods. Liab. Litig.*,
 210 F.R.D. 61 (S.D.N.Y. 2002) .......................................................................12

*Saltz* v. *First Frontier, LP*,
 782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir.
 2012) .........................................................................................................16, 18

*In re Sonus Networks, Inc. Sec. Litig.*,
 247 F.R.D. 244 (D. Mass. 2007).......................................................................15

*St. Stephens School* v. *PricewaterhouseCoopers Accountants N.V.*,
 570 F. App'x 37 (2d Cir. 2014) ..........................................................................5

*Starr Found.* v. *AIG, Inc.*,
 901 N.Y.S.2d 246 (App. Div. 2010) (Moskowitz, J., dissenting) .....................10

*Stephenson* v. *Citco Grp. Ltd.*,
 700 F. Supp. 2d 599 (S.D.N.Y. 2010), *aff'd on other grounds sub nom.*
 *Stephenson* v. *PricewaterhouseCoopers, LLP*, 482 F. App'x 618 (2d Cir.
 2012) ................................................................................................16, 18, 19

*Sumitomo* v. *Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) ................................................................6

*Tooley* v. *Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ..............................................................17

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ........................................................7, 11

*Wal-Mart Stores, Inc.* v. *Dukes*,
    131 S. Ct. 2541 (2011).........................................................2, 10, 12

*Yudell* v. *Gilbert*,
    949 N.Y.S.2d 380 (App. Div. 2012).................................................19

STATUTES AND RULES

U.S. Const. amend. V, cl. 3................................................................3, 10

Rules Enabling Act, 28 U.S.C. § 2072(b).........................................3, 10

N.Y. C.P.L.R. § 1411 ...........................................................................12

N.Y. P'ship Law § 121-901 ..................................................................16

Defendants-Petitioners The Citco Group Limited, Citco Fund Services (Europe) B.V., Citco (Canada) Inc., Citco Bank Nederland N.V. Dublin Branch, Citco Global Custody N.V., and Citco Fund Services (Bermuda) Limited (collectively, "Citco") respectfully petition under Rule 23(f) of the Federal Rules of Civil Procedure for permission to appeal from an order of the district court (Marrero, J.) certifying a class under Rule 23(b)(3).

## Introduction

This action arises from the revelation that Bernard L. Madoff Investment Securities, LLC (the "Madoff Firm") was conducting a Ponzi scheme. Members of the Class were investors in four funds—Fairfield Sentry Ltd., Fairfield Sigma Ltd., Greenwich Sentry, L.P., and Greenwich Sentry Partners, L.P. (collectively, the "Funds")—managed by the Fairfield Greenwich Group ("FGG"). The Funds placed those assets into accounts held by the Madoff Firm. When the Madoff Firm collapsed, the Funds lost billions and the investors' shares became worthless. The Class then sued FGG, individuals and entities affiliated with FGG, and certain FGG service providers. The Citco entities were service providers; certain of them acted as administrator, custodian, bank, and depository for the Funds. Among its tasks, Citco calculated the Net Asset Value ("NAV") of the Funds using data provided by the Madoff Firm.

Following this Court's vacatur of a previous order certifying a class,

the district court issued a second order re-certifying the same Class. Citco

respectfully submits that the district court's second certification order was error;

conflicts with rulings in similar Madoff-related decisions, including decisions by

this Court; implicates important and recurring issues of law; and denies Citco its

right to defend itself against claims seeking more than $5 billion in damages. This

Court should grant permission to appeal.

     *First*, reasonable reliance is at issue in every claim asserted against

Citco. A class cannot be certified unless the district court affirmatively finds,

following a "rigorous analysis,"[1] that "questions of law or fact common to class

members predominate over any questions affecting only individual members," Fed.

R. Civ. P. 23(b)(3). Common issues do not predominate here because, among

other reasons, each Class member must prove that she reasonably relied on the

misrepresentations at issue and the Class is too numerous to permit manageable

discovery and hearings on individual issues of reasonable reliance. *See Amgen Inc*.

v. *Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1193 (2013). Citco is

therefore entitled to obtain evidence concerning reasonable reliance and

comparative fault through discovery, and to litigate those issues individually based

on that evidence. For that and similar reasons, the district court's certification

---

[1]   *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2551-52 (2011) (quotation
marks omitted).

order fails to satisfy the requirements of Rule 23 and violates the Rules Enabling Act, 28 U.S.C. § 2072(b), and the Due Process Clause, U.S. Const. amend. V, cl. 3.

*Second*, the district court erroneously applied the presumption of reliance established in *Affiliated Ute Citizens* v. *United States*, 406 U.S. 128 (1972), to the Class's federal securities claims against Citco Fund Services (Europe) B.V. and Citco (Canada) Inc. (the "Citco Administrators"). Those claims allege that the Class relied on the Citco Administrators' allegedly false NAV statements in making their investment decisions. Because that presumption is limited to claims based mainly on omissions, it does not apply here. The district court's decision contravenes well-established law and should be corrected.

*Third*, the district court failed to address whether this action is a "superior" method of adjudicating certain claims raised here. Fed. R. Civ. P. 23(b)(3). It is not. As other district courts in this Circuit and this Court have held on materially indistinguishable facts, the Class's common-law "holder" claims are derivative because they arise from injuries allegedly sustained directly by the Funds, and only secondarily by the Class. A derivative action or a direct action on behalf of the Funds is thus superior.

*Fourth*, the district court again failed to address Citco's argument that the Class's theory as to why investments in the Funds qualify as domestic

transactions under *Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247 (2010),

raises individual issues that preclude certification of the federal securities claims.

## Questions Presented

1.      Do individual issues concerning whether each Class member

actually relied on the alleged misrepresentations at issue, and whether that reliance

was reasonable, preclude certification of plaintiffs' claims?

2.      Does the *Affiliated Ute* presumption apply to the Class's federal

securities claims where they are primarily based on alleged misrepresentations?

3.      Is this action "superior" to a derivative or direct action on

behalf of the Funds as to plaintiffs' "holder" claims, which are derivative?

4.      Do individual issues concerning when and where each Class

member incurred irrevocable liability in becoming a Fund investor preclude

certification of the Class's federal securities claims?

## Proceedings Below

The Class asserts a variety of claims against different Citco entities,

including violations of Section 10(b) and 20(a) of the Securities Exchange Act of

1934; negligent misrepresentation; breach of fiduciary duty; aiding and abetting

fraud and breach of fiduciary duty by FGG; negligence; gross negligence; unjust

5

enrichment; and third-party breach of contract.[2]  In February 2013, the district

court certified these claims as to a class of investors "who suffered a net loss of

principal invested in the Funds."  Ex. 1, at 1.  This Court granted Citco's petition

for permission to appeal.

In June 2014, this Court vacated the district court's prior certification

order because it did not "provide sufficient factual findings" as to Citco.  The

district court was directed on remand to consider "the developed record, including

any facts revealed by discovery that has taken place since the original certification

order."  *St. Stephens School* v. *PricewaterhouseCoopers Accountants N.V.*, 570 F.

App'x 37, 39-40 (2d Cir. 2014).  The vacatur did not limit the issues the district

court should consider on remand.  *See id.*

Plaintiffs filed a renewed class certification motion.  Citco opposed

the motion on each of the grounds set forth in this petition.  The district court then

granted plaintiffs' motion and re-certified the same class.  (Ex. 1.)  The district

court did not address all of the Rule 23 elements.  Rather, it addressed only two

issues:  "how common evidence can show (1) the existence of a duty of care . . .

under the standard identified in *Credit Alliance Corp.* v. *Arthur Andersen & Co.*,

[483 N.E.2d 110 (N.Y. 1985)], or otherwise; or (2) reliance by the class on alleged

misrepresentations . . . ."  Ex. 1, at 12.  The court failed to address Citco's

---

[2]  *See* the accompanying Declaration of Walter Rieman dated Mar. 16, 2015, Ex. 2, ¶¶ 473-540, 566-72.  Exhibits to that Declaration are cited hereafter as "Ex."

arguments that this action is not "superior" to a derivative or direct action on behalf of the Funds and that plaintiffs' federal securities claims cannot be certified in light of the plaintiffs' theory as to why their investments in the Funds were "domestic" under *Morrison* v. *National Australia Bank Ltd.*, 561 U.S. 247 (2010).

## Reasons for Granting the Petition

This Court has "'unfettered discretion'" to grant permission to appeal from a class certification order "based on any consideration that [it] finds persuasive." *Hevesi* v. *Citigroup Inc.*, 366 F.3d 70, 76 (2d Cir. 2004) (internal quotation marks omitted). A petition may properly be granted where "the certification order implicates a legal question about which there is a compelling need for immediate resolution[]" or "where [there are] special circumstances that militate in favor of an immediate appeal." *Sumitomo* v. *Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139-40 (2d Cir. 2001).

## I. Common Issues Do Not Predominate Because Whether Each Class Member Actually Relied on Citco's Alleged Misrepresentations and Whether That Reliance Was Reasonable Raise Individual Issues

1. Proof of reasonable reliance is required for all of the claims asserted against Citco. Reasonable reliance is an element of many of the claims[3] and proof of reasonable reliance is essential to the Class's case-specific theories of

---

[3] *E.g.*, *Basic* v. *Levinson*, 485 U.S. 224, 241-50 (1988) (federal securities claims); *Hydro Investors, Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) (negligent misrepresentation); *Churchill Fin. Cayman, Ltd.* v. *BNP Paribas*, 944 N.Y.S.2d 116, 117 (App. Div. 2012) (aiding and abetting fraud).

proximate cause, injury, and damages on all of its claims.  *See, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 n.6 (2d Cir. 2013); *Laub* v. *Fasessel*, 745 N.Y.S.2d 534, 536 (App. Div. 2002).  Essential to the Class's theory of Citco's alleged liability for Madoff's fraud is proof that the Class subjectively "reposed [its] trust and confidence in Citco" and "relied on Citco."  (Ex. 2 ¶¶ 334, 493; *see also id.* ¶¶ 502, 506.)  Such proof necessarily requires an assessment of individualized facts concerning the relationship (if any) between each investor and each Citco defendant.  *E.g.*, *Lumbermens Mut. Cas. Co.* v. *Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005).

       2.      Under Rule 23, when, as here, (i) reliance is an individual issue, and (ii) the Class is too numerous to permit manageable individual discovery and evidentiary hearings on reliance, common issues do not predominate and class certification is improper.[4]

       Limited discovery from plaintiffs confirms that this principle precludes certification.  ██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[4]   *See, e.g.*, *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416 (2014); *Amgen Inc.* v. *Conn Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1193 (2013); *In re AIG, Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012).

███████████████████████████████████████████████

███████████████████████████████████████████████

█ ████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ And although

plaintiffs assert that Citco's NAV statements were "fundamental to [their] initial

investment decisions" and "necessarily" relied upon (Ex. 3 at Ex. A ¶ 335), ████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████

Individual issues also predominate as to whether a particular Class member's purported reliance was reasonable.  Much of the Class's theory of liability hinges on the assertion that Citco should not have trusted the Madoff Firm because of supposed "red flags."  Many plaintiffs, however, are sophisticated, experienced investors. ████████████████████████████████████

██████████████████████████████████████████

████████████████████████  Citco is entitled to discover and present individual evidence given investors' various degrees of sophistication, diligence, and knowledge of "red flags."  A trier of fact could reasonably find that any investor who was aware of the same or similar "red flags" did not *reasonably* rely on Citco's alleged stature or on any of the alleged misrepresentations at issue.

The Class's holder claims, which seek billions in alleged damages, also raise individual issues relating to reasonable reliance because if New York

---

5 ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

recognizes holder claims at all, it imposes heightened reliance-related requirements.[6]

       3.    The district court's order deprives Citco of its right to litigate issues of plaintiffs' alleged reasonable reliance by obtaining discovery of and presenting individual evidence. The district court incorrectly held that predominance is satisfied because the Class can prove reliance by using "common evidence." (Ex. 1, at 25-28.) But that finding fails to address the evidence that *Citco* intends to present rebutting each individual plaintiff's claim of reasonable and actual reliance.[7] Because the district court's certification order deprives Citco of that right, it is inconsistent with Rule 23(b)(3) and "abridge[s]" Citco's "substantive right" to present its reliance-related defenses in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b), and the Due Process Clause. *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2560-61 (2011).

       The district court failed to appreciate this consequence, and erred by

---

[6]  *See In re Nat'l Century Fin. Enter. Litig.*, 846 F. Supp. 2d 828, 884 (S.D. Ohio 2012) (New York law); *Starr Found.* v. *AIG, Inc.*, 901 N.Y.S.2d 246, 259 (App. Div. 2010) (Moskowitz, J., dissenting).

[7]  Assertions about common evidence rely on inaccurate or litigable inferences.

misinterpreting *In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108 (2d

Cir. 2013), to mean that a plaintiff's claim to use common evidence of reliance is

sufficient to prove reliance on a class-wide basis.  (*See* Ex. 1 at 26-28.)

*Foodservice* held that "[*i*]*n cases involving fraudulent overbilling*, payment may

constitute circumstantial proof of reliance . . . ."  729 F.3d at 120 (emphasis

added).[8]  There, the fact that a plaintiff paid an amount billed indicated that the

plaintiff had actually received and relied on a bill for that amount.  ███████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████  Put another way, unlike

*Foodservice*, the alleged common evidence in this case is not conclusive proof of

reliance.

It is also insufficient to suggest, as the district court did, that, if

plaintiffs collectively had known the truth allegedly concealed by the

misrepresentation, they would not have invested.  (*See* Ex. 1, at 26-27.)  Such a

rule, if followed, would substitute proof of materiality for proof of actual reliance.

*E.g.*,  *Goodman* v. *Genworth Fin. Wealth Mgmt., Inc.*, 300 F.R.D. 90, 109

---

[8]    The court in *Goodman* v. *Genworth Fin. Wealth Mgmt., Inc.*, 300 F.R.D. 90,
105-06 (E.D.N.Y. 2014), rejected the same arguments the district court
accepted in this case.  The inconsistency between the Goodman court's view of
Foodservice and the district court's view in this case warrants clarification from
this Court.

(E.D.N.Y. 2014) (noting same).

      The district court also failed to address Citco's comparative fault defense.  Even if Citco were at fault in supposedly disregarding or misapprehending "red flags" about Madoff (which it denies), Citco would be entitled to show that at least some plaintiffs were at fault in similar ways.  *See* N.Y. C.P.L.R. § 1411; *see also Arbegast* v. *Bd. of Educ. of S. New Berlin Cent. Sch.*, 480 N.E.2d 365, 369-70 (N.Y. 1985).  Such a defense involves individual issues concerning each plaintiff's sophistication and knowledge.[9]  And because that defense would require a jury to *compare* a particular plaintiff's fault with Citco's fault (if any), individual issues predominate, and class certification is neither proper nor constitutionally permissible under the Seventh Amendment.[10]

      Finally, the district court's suggestion that it may address any "individual issues . . . at a later stage" is incorrect.  (Ex. 1, at 29.)  A district court must ensure at the time of certification that there is an adequate structure for adjudicating all claims and defenses.  Here, however, the Class is too numerous for the district court to hold hearings on individual issues.  But without individual hearings, Citco would never be able to litigate its plaintiff-specific defenses.

---

[9]   *See In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 401-02 (S.D.N.Y. 2008); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002).

[10]  *E.g.*, *Benner* v. *Becton Dickinson & Co.*, 214 F.R.D. 157, 174 (S.D.N.Y. 2003); *see also Wal-Mart*, 131 S. Ct. at 2561; *Johnson* v. *Nextel Commc'ns Inc.*, 2015 WL 897653, at *17 n.27 (2d Cir. Mar. 4, 2015).

Indeed, the Class has never argued that there is a conceivable method for Citco to litigate individual issues such as reliance and comparative fault, and the district court failed to identify any such method.

## II. Because the Class's Federal Securities Claims Are Based Mainly on Alleged Misrepresentations, *Affiliated Ute* Does Not Apply

The district court incorrectly found that the presumption of reliance established in *Affiliated Ute*, 406 U.S. 128, which is limited to claims based mainly on omissions under the federal securities laws, applies to the Class's federal securities claims against the Citco Administrators.

The Class's federal securities claims turn mainly on alleged affirmative misrepresentations—not omissions. *E.g.*, *Starr* v. *Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005). The rationale for the *Affiliated Ute* doctrine is that "reliance as a practical matter is impossible to prove where . . . no positive statements exist." *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 5730020, at *3 (S.D.N.Y. Oct. 22, 2013) (quotation marks omitted). Where, as here, affirmative statements exist (Citco's NAV statements), a presumption is unwarranted: "The presumption is not intended for cases in which a party's injury was allegedly caused by reliance on an affirmative statement that, through further disclosure, would eventually be proven false." *Id*. The central theory of the Class's federal securities claims is that the NAVs in statements issued by the Citco Administrators constituted misrepresentations.

The district court dismissed the importance of the existence of the Class's misrepresentation-based claims concerning Citco's NAV statements and incorrectly concluded that the presumption applies because Citco allegedly failed to disclose certain information concerning its calculation of the NAV.  (Ex. 1, at 33-34.)  In so doing, the district court created a direct conflict with other courts in this Circuit by finding that the presumption applies where claims are based on affirmative statements that omitted certain information.  *Cf. Lehman*, 2013 WL 5730020, at *3 (presumption does not apply where affirmative statements exist); *Goodman*, 300 F.R.D. at 94, 104-06 (same).  The district court's decision risks creating mass confusion by allowing a misrepresentation claim to be recast as an omission claim, thus relieving plaintiffs of their burden of proving reliance.  "Every misrepresentation could be characterized as an omission if it were defined in terms of the absence of information that would correct the misrepresentation."  *Lehman*, 2013 WL 5730020, at *3; *Goodman*, 300 F.R.D. at 105.  Since the Class has extensively pleaded reliance on Citco's NAV calculations, which are affirmative statements, a presumption is unwarranted.  (*See* Ex. 2 ¶¶ 523-25, 536-39; Ex. 3 at Ex. A ¶ 335).

## III.   This Action Is Not a "Superior" Method of Adjudicating the Class's "Holder" Claims Because They Are Derivative in Nature

1.      As the district court recognized in its prior class certification order, "[w]hen certifying a proposed class in accordance with Rule 23(b)(3), courts

must consider whether a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Anwar* v. *Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 23(b)(3)). After this Court vacated that order, ████████████████████ ████████████████████████████████████████████████ ██████████████████.[11] ████████████████ The district court, however, did not address this issue and made no superiority finding.[12]

> 2.   Under the governing New York choice-of-law principles, whether the Class's holder claims are direct or derivative must be determined

---

[11]   Courts have recognized that it is appropriate to consider whether claims are direct or derivative in determining whether a class action is superior. *See In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 253 (D. Mass. 2007); *City P'ship Co.* v. *Jones Intercable, Inc.*, 213 F.R.D. 576, 589-91 (D. Colo. 2002); *Farrie* v. *Charles Town Races, Inc.*, 901 F. Supp. 1101, 1110-11 (N.D. W. Va. 1995). Furthermore, it bears mention that actions brought on behalf of the Funds that are substantially similar to this one are pending in other forums. Exs. 11-14, Rb. Amsterdam 30 mei 2012 (Krys / PricewaterhouseCoopers Accountants) (Neth.)

[12]   The district court previously stated that the direct/derivative issue was "ripe for further factual development" and "more properly decided at the class certification or summary judgment stage," and that further factual development could "change the premise for the Court's [prior] ruling on" this issue. *Anwar* v. *Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402 (S.D.N.Y. 2010). Although Citco maintains that this issue is a legal one, *see Buckley* v. *Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991), ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ Because the district court did not address the superiority requirement, it did not address this evidence.

under the law of the jurisdictions in which the Funds were organized.  This is so

for claims by investors in Greenwich Sentry, L.P. and Greenwich Sentry Partners,

L.P. (the "Onshore Funds"), which are Delaware limited partnerships (Exs. 15;

16), because New York's Partnership Law provides that "the laws of the

jurisdiction under which a foreign limited partnership is organized govern its

organization and internal affairs," N.Y. P'ship Law § 121-901.  And this is so for

claims by investors in Fairfield Sentry Ltd. and Fairfield Sigma Ltd. (the "Offshore

Funds"), which are business corporations organized in the British Virgin Islands

("BVI").  ▮▮▮▮▮▮▮▮  This Court and many district courts in this Circuit have

held that under the internal affairs doctrine the law of the jurisdiction where the

relevant entity is incorporated governs the direct/derivative issue.[13]  Delaware law

and BVI law thus govern whether the claims of the Onshore Fund investors and the

Offshore Fund investors, respectively, are direct or derivative.

       3.     The Class essentially alleges that Citco failed to perform its

---

[13]  *See Newman* v. *Family Mgmt. Corp.*, 530 F. App'x 21, 27-28 (2d Cir. 2013),
*aff'g* 748 F. Supp. 2d 299 (S.D.N.Y. 2010); *Prickett* v. *New York Life Ins. Co.*,
896 F. Supp. 2d 236, 248-49 (S.D.N.Y. 2012); *In re Optimal U.S. Litig.*, 813 F.
Supp. 2d 351, 376 (S.D.N.Y. 2011), *modified on reconsideration,* 813 F. Supp.
2d 383 (S.D.N.Y. 2011); *Saltz* v. *First Frontier, LP*, 782 F. Supp. 2d 61, 80
(S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012); *Stephenson* v. *Citco
Grp. Ltd.*, 700 F. Supp. 2d 599, 608 (S.D.N.Y. 2010), *aff'd on other grounds
sub nom. Stephenson* v. *PricewaterhouseCoopers, LLP*, 482 F. App'x 618 (2d
Cir. 2012); *Krys* v. *Sugrue (In re Refco Inc. Sec. Litig.)*, 2010 U.S. Dist. LEXIS
33642, at *112-13 (S.D.N.Y. Mar. 1, 2010), *adopted*, 2011 U.S. Dist. LEXIS
47688 (S.D.N.Y. May 3, 2011).

17

duties as administrators and custodians of the Funds by, among other things, misrepresenting the Funds' NAV. (*See, e.g.*, Ex. 2 ¶¶ 489-90, 495-96.) The Class claims that Citco should have discovered that the Funds' actual NAV was close to zero and somehow communicated this to Fund investors. If that had happened, however, the Madoff Firm would have collapsed, leaving the Funds (and derivatively their investors) to recover any assets the Madoff Firm happened to hold at the time. Citco's alleged misconduct, in other words, caused an injury to the Funds through the continuing dissipation of the Funds' assets and injured Fund investors, if at all, only derivatively and pro rata. (*See* Ex. 2 ¶¶ 1-3.)

Under Delaware law, whether a shareholder's claim is direct or derivative turns "*solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley* v. *Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). The injury that the Class claims to suffer—the decline in the value of Class members' investments in the Funds—was suffered by all Class members "*pro rata* in proportion with their ownership . . . solely because they are [investors]." *Feldman* v. *Cutaia*, 951 A.2d 727, 733 (Del. 2008). For that reason, every district court in this Circuit that has addressed similar allegations by investors in Madoff feeder funds has concluded that the investors' holder claims

were derivative in nature.[14]  This Court has reached the same conclusion in cases

involving holder claims substantially similar to those asserted here,[15] including in a

materially indistinguishable case decided just three months ago.  *See Elendow*

*Fund, LLC* v. *Rye Inv. Mgmt.*, 588 F. App'x 27 (2d Cir. 2014).  In fact, the

*Elendow* plaintiff relied explicitly on the district court's ruling on the motion to

dismiss *in this case* to argue that its breach of fiduciary duty claim was direct in

nature because the *Elendow* plaintiff, like the Class here, had alleged that the

defendants "breached their fiduciary duties by disseminating false and misleading

materials about the [f]und [at issue] that induced Plaintiff to invest."  *See* Exs. 16,

at 14; 17, at 1-2.  In affirming the *Elendow* court's ruling that the "holder" breach

of fiduciary duty claim was derivative under Delaware law, this Court rejected that

---

[14]  *See In re Optimal*, 813 F. Supp. 2d at 376-80 (New York law); *Saltz*, 782 F. Supp. 2d at 77-79 (Delaware law); *Newman*, 748 F. Supp. 2d at 314-16 (same); *Stephenson*, 700 F. Supp. 2d at 608-11 (same).

[15]  *See Newman*, 530 F. App'x at 26-27 & n.1; *Stephenson*, 482 F. App'x at 621. The district court previously distinguished *Stephenson* based on its view that New York, not Delaware, law governed the direct/derivative issue and that *Stephenson* involved mismanagement, not misrepresentation, claims.  *Anwar* v. *Fairfield Greenwich Ltd.,* 884 F. Supp. 2d 92, 98-99 (S.D.N.Y. 2012).  This was error because *Stephenson* involved holder claims, including a negligence-based misrepresentation claim, based in part on an auditor's allegedly wrongful issuance of audit reports.  *See* 700 F. Supp. 2d at 604-05, 608.  Furthermore, the basis for this distinction is undermined by *Newman*, which involved a negligent misrepresentation claim that this Court held was direct only "[t]o the extent [that] the claim . . . alleges fraudulent inducement" to purchase investments. 530 F. App'x at 27 n.1; *see also Newman*, 748 F. Supp. 2d at 316 (explaining that inducement claims refer to purchase claims).  The Court therefore held that the holder claim for negligent misrepresentation was derivative.

argument by holding that the relevant inquiry was whether the *Elendow* plaintiff's

injury was intertwined with the fund's injury. The *Elendow* plaintiff's alleged

injury is indistinguishable from the Class's alleged injuries.[16]

BVI law would permit only the Offshore Funds, and not investors in

those Funds, to assert the common-law claims at issue here. (Exs. 21-23.)

Accordingly, under both Delaware and BVI law, an action by the

Funds would be superior.[17] This Court's review is necessary to correct the district

court's failure to make a superiority finding and to resolve the conflict its decision

creates with decisions by other districts courts in this Circuit and by this Court.

## IV. The Class's Theory of Liability as to Its Federal Securities Claims Raises Individual Issues and thus Precludes Certification

The federal securities laws apply to "the purchase or sale of a security

listed on an American stock exchange, and the purchase or sale of any other

security in the United States." *Morrison* v. *Nat'l Australia Bank Ltd.*, 561 U.S.

---

[16] *Elendow* also supports Citco's reliance on this Court's decision in *Stephenson*, *see supra* n.15, which the district court distinguished based on what it perceived as the "asymmetrical injury alleged in the [Second Consolidated Class Action Amended Complaint]—the fact that some investors lost money, while others did not." *Anwar*, 884 F. Supp. 2d at 99 (internal quotation marks omitted). This Court rejected that argument. *See Elendow*, 588 F. App'x 27 at 29.

[17] Plaintiffs' holder claims would be derivative even if, as the district court previously held, New York law governed the direct/derivative issue since, as courts in this Circuit have recognized, the First Department has decided "to adopt the test the Supreme Court of Delaware developed in *Tooley*." *Yudell* v. *Gilbert*, 949 N.Y.S.2d 380, 381 (App. Div. 2012); *see also, e.g.*, *Christensen* v. *Nauman*, 2014 WL 7392916, at *8 nn.7-8 (S.D.N.Y. Dec. 29, 2014).

247, 273 (2010).  As this Court has held, a purchase or sale is made in the United States "when the parties incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States." *Absolute Activist Value Master Fund Ltd.* v. *Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012).

████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████ Certification of the federal securities claims premised on this theory is inappropriate because that theory provides no common answer to the question of when and where irrevocable liability arose.  Instead, it necessitates individual inquiries to determine whether irrevocable liability as to each investor was incurred in the United States.[18]

The district court did not address this issue although Citco squarely raised it.  This issue was also briefed in connection with the first class certification motion, Exs. 75, at 27-29; 76, at 1, but the district court did not address it then either.  This Court's review is warranted to correct the district court's certification of the federal securities claims and to vindicate Citco's right to be heard.

## Conclusion

Citco's petition for permission to appeal should be granted.

---

[18] ██████████████████████████████████████████
████████████████████████████████████

Dated:   New York, New York
            March 17, 2015

Respectfully submitted,

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

Of counsel:
   Brad S. Karp
   Leslie Gordon Fagen
   Andrew G. Gordon
   Gregory F. Laufer
   Patrick J. Somers

By: _Walter Rieman_

    Walter Rieman
    wrieman@paulweiss.com
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3260

*Attorneys for Defendant-Petitioners
The Citco Group Ltd., Citco Fund Services
(Europe) B.V., Citco (Canada) Inc., Citco
Global Custody N.V., Citco Bank Nederland
N.V. Dublin Branch, and Citco Fund
Services (Bermuda) Ltd.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

PASHA S. ANWAR, ET AL.

> *Plaintiffs-Respondents*,

-against-

FAIRFIELD GREENWICH LTD., ET AL.,

> *Defendants.*

THE CITCO GROUP LTD., ET AL.,

> *Defendants-Petitioners.*

No. 15-    -cv

## Declaration of Walter Rieman

WALTER RIEMAN declares pursuant to 28 U.S.C. § 1746:

1.      I am a member of the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, counsel for Defendants-Petitioners The Citco Group Limited, Citco Bank Nederland N.V. Dublin Branch, Citco Global Custody N.V., Citco Fund Services (Europe) B.V., Citco Fund Services (Bermuda) Limited, and Citco (Canada) Inc. I submit this declaration to place before the Court documents relevant to the Petition of Defendants-Petitioners The Citco Group Limited, et al., for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f).

2.      Accompanying this Declaration in Volume I of XII is a copy of the following document:

> Exhibit 1:    Order of the United States District Court for the Southern District of New York in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), entered March 3, 2015, granting motion for class certification (District Court Docket Entry No. 1357).

3.      Accompanying this Declaration in Volume II of XII are copies of the following documents:

> Exhibit 2:    Second Consolidated Amended Complaint in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), filed September 29, 2009 (District Court Docket Entry No. 273).

> Exhibit 3:    Letter David Barrett sent to Judge Victor Marrero, dated April 17, 2014, enclosing proposed amendments to the Second Consolidated Class Action Complaint.

> Exhibit 4:    Order of the United States District Court for the Southern District of New York in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), entered May 13, 2014, granting motion to amend the Second Consolidated Amended Complaint (District Court Docket Entry No. 1267).

> Exhibit 5:    The Anwar Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM), filed March 1, 2011 (District Court Docket Entry No. 776).

4.      Accompanying this Declaration in Volume III of XII are copies of the following documents:

> Exhibit 6:    Declaration of Oren J. Warshavsky in *Securities Investor Protection Corp. v. Bernard L. Madoff Investment*

*Securities, LLC*, 11-cv-06849 (JSR) (S.D.N.Y. Jan. 11, 2012), ECF No. 16, attaching (i) a copy of the *Complaint in Picard* v. *ABN AMRO Bank N.V., et al.*, Adv. Pro. No. 10-05354 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1; and (ii) a copy of the Complaint in *Picard* v. *ABN AMRO Bank (Ireland) Ltd., et al.*, Adv. Pro. No. 10-05355 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1, filed on September 15, 2014, as Exhibit 111 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 7:    Complaint in *Picard* v. *Citibank, N.A., et al.*, Adv. Pro. No. 10-05345 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1, filed on September 15, 2014, as Exhibit 112 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

5.    Accompanying this Declaration in Volume IV of XII are copies

of the following documents:

Exhibit 8:    Complaint in *Picard* v. *Natixis, et al.*, Adv. Pro. No. 10 5353 (BRL) (Bankr. S.D.N.Y. Dec. 8, 2010), ECF No. 1, filed on September 15, 2014, as Exhibit 113 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 9:    Memorandum of Law in Support of Natixis' Motion to Dismiss the Trustee's Complaint or in the Alternative to Stay the Action in *Picard* v. *Natixis, et al.*, Adv. Pro. No. 10-5353 (BRL) (Bankr. S.D.N.Y. July 15, 2011), ECF No. 21, filed on September 15, 2014, as Exhibit 114 in support of Defendants Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 10:    Deferred Prosecution Agreement between the Office of the United States Attorney for the Southern District of New York and JP Morgan Chase Bank, N.A., dated

January 6, 2014, filed on September 15, 2014, as Exhibit 117 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 11: Shareholders' Derivative Complaint in *Morning Mist Holdings Ltd. & Miguel Lomeli* v. *Fairfield Greenwich Group, et al.*, No. 601511/2009 (N.Y. Sup. Ct. N.Y. Cnty. May 15, 2009), removed to United States Bankruptcy Court for the Southern District of New York as *Morning Mist Holdings Ltd. & Miguel Lomeli* v. *Fairfield Greenwich Group, et al.*, No. 10-03765 (BRL) (Bankr. S.D.N.Y. Sept. 27, 2010), ECF No. 1, filed on September 15, 2014, as Exhibit 110 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

6.      Accompanying this Declaration in Volume V of XII are copies of the following documents:

Exhibit 12: Amended Complaint of Litigation Trustee in *Walker, Truesdell, Roth & Associates, Inc.* v. *GlobeOp Financial Services LLC*, No. 600498/2009 (N.Y. Sup. Ct. N.Y. Cnty. May 11, 2012), NYSCEF Doc. No. 142, *dismissed*, 2013 WL 8597474 (N.Y. Sup. Ct. N.Y. Cnty. May 27, 2013) [*sic*; decision actually issued on May 27, 2014], *notice of appeal filed*, No. 600498/2009 (N.Y. Sup. Ct. N.Y. Cnty. June 27, 2014), NYSCEF Doc. No. 234, filed on September 15, 2014, as Exhibit 115 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 13: Amended Complaint of Litigation Trustee in *Walker, Truesdell, Roth & Associates, Inc.* v. *GlobeOp Financial Services LLC*, No. 600469/2009 (N.Y. Sup. Ct. N.Y. Cnty. May 11, 2012), NYSCEF Doc. No. 151, *dismissed*, 2013 WL 8597474 (N.Y. Sup. Ct. N.Y. Cnty. May 27, 2013) [*sic*; decision actually issued on May 27, 2014],

*notice of appeal filed*, No. 600469/2009 (N.Y. Sup. Ct. N.Y. Cnty. June 27, 2014), NYSCEF Doc. No. 262, filed on September 15, 2014, as Exhibit 116 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 14: Statement of Claim in *Fairfield Sentry Ltd., et al.* v. *PricewaterhouseCoopers LLP & Stephen Wall*, CV-12-454648 (Can. Ont. Sup. Ct. J. May 28, 2012), filed on September 15, 2014, as Exhibit 118 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 15: Greenwich Sentry, L.P. Ninth Amended and Restated Limited Partnership Agreement, dated December 24, 2004, filed on September 15, 2014, as Exhibit 85 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 16: Greenwich Sentry Partners, L.P. Limited Partnership Agreement, dated April 30, 2006, on September 15, 2014, as Exhibit 86 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 17: Reply Brief for Plaintiff-Appellant in *Elendow Fund* v. *Rye Investment Management*, No. 13-3642-cv (2d Cir.), ECF No. 135.

Exhibit 18: Plaintiff's Memorandum of Law in Opposition to the XL Fund's Motion to Dismiss the Second Amended Complaint in *Elendow Fund* v. *Rye Investment Management*, No. 10 Civ. 09061 (S.D.N.Y.), ECF No. 70.

Exhibit 19: Letter I sent to Judge Victor Marrero, dated December 24, 2014, regarding *Elendow Fund* v. *Rye Investment Management*, No. 10 Civ. 09061 (S.D.N.Y.) and

*Elendow Fund* v. *Rye Investment Management*, No. 13-3642-cv (2d Cir.).

7.     Accompanying this Declaration in Volume VI of XII is a copy of the following document:

Exhibit 20:   Affidavit of Gerard St. C. Farara, Q.C., dated December 23, 2009, ECF No. 367, filed on September 15, 2014, as Exhibit 94 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

8.     Accompanying this Declaration in Volume VII of XII is a copy of the following documents:

Exhibit 21:   Second part of the Affidavit of Gerard St. C. Farara, Q.C., dated December 23, 2009, ECF No. 367, filed on September 15, 2014, as Exhibit 95 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

9.     Accompanying this Declaration in Volume VIII of XII are copies of the following documents:

Exhibit 22:   Supplemental Affidavit of Gerard St. C. Farara, Q.C., dated May 22, 2010, ECF No. 470, filed on September 15, 2014, as Exhibit 96 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

Exhibit 23:   Letter from David A. Barrett to Judge Victor Marrero, dated July 19, 2010, ECF No. 500, filed on September 15, 2015 as Exhibit 97 in support of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, Master File No. 09-cv-0118 (VM).

10.    Copies of the following are attached as Volume IX of XII, in redacted form, as "Confidential Discovery Material" pursuant to the Second Amended Stipulation and Order Governing Confidentiality of Discovery Material in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), dated December 2, 2010 (District Court Docket Entry No. 591), as authorized by the Honorable Victor Marrero on September 10, 2014 (District Court Docket Entry No. 1319):



Exhibit 24:
filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 25:
iled under seal pursuant to confidentiality order.

Exhibit 26:
filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 27:
filed under seal pursuant to confidentiality order on September 15, 2014,



Exhibit 28: ████████████████████████████████ filed under seal pursuant to confidentiality order on September 15, 2014.

Exhibit 29: ████████████████████████████ iled under seal pursuant to confidentiality order on September 15, 2014.

Exhibit 30: ████████████████████████████████ filed under seal pursuant to confidentiality order on September 15, 2014.

Exhibit 31: ████████████████████████████, filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 32: ████████████████████████████ filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 33: ████████████████████████████ filed under seal pursuant to confidentiality



order on September 15, 2014,

Exhibit 34:

filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 35:

, filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 36:

filed under seal pursuant to confidentiality order on September 15, 2014,

.

Exhibit 37:

filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 38:

filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 39:

, filed under seal pursuant to confidentiality order on September 15, 2014,



Exhibit 40:

, filed under seal pursuant to confidentiality order on September 15, 2014,

.

Exhibit 41:

filed under seal pursuant to confidentiality order on September 15, 2014.

Exhibit 42:

, filed under seal pursuant to confidentiality order on September 15, 2014,

.

11.     Copies of the following are attached as Volume X of XII, in redacted form, as "Confidential Discovery Material" pursuant to the Second Amended Stipulation and Order Governing Confidentiality of Discovery Material in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), dated December 2, 2010 (District Court Docket Entry No. 591), as authorized by the Honorable Victor Marrero on September 10, 2014 (District Court Docket Entry No. 1319):

Exhibit 43:





█████████, filed under seal pursuant to confidentiality order on September 15, 2014, █████████

Exhibit 44: █████████████████████

█████████, filed under seal pursuant to confidentiality order on September 15, 2014, █████████

Exhibit 45: █████████████████████

filed under seal pursuant to confidentiality order on September 15, 2014, █████████

Exhibit 46: █████████████████████

filed under seal pursuant to confidentiality order on September 15, 2014, █████████.

Exhibit 47: █████████████████████

, filed under seal pursuant to confidentiality order on September 15, 2014, █████████.

Exhibit 48: █████████████████████ filed under seal pursuant to confidentiality order on September 15, 2014, █████████



Exhibit 49: ██████████████████████████ filed under seal pursuant to confidentiality order on September 15, 2014, ██████████████████ .

Exhibit 50: █████████████████, filed under seal pursuant to confidentiality order on September 15, 2014, ██████████████████ .

Exhibit 51: ██████████████████, filed under seal pursuant to confidentiality order on September 15, 2014, ██████████████████ .

Exhibit 52: ██████████████ filed under seal pursuant to confidentiality order on September 15, 2014, ██████████████████

Exhibit 53: ██████████████ filed under seal pursuant to confidentiality order on September 15, 2014, ██████████████████

Exhibit 54: ██████████████ filed under seal pursuant to



confidentiality order on September 15, 2014,

Exhibit 55:

, filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 56:

filed under seal pursuant to confidentiality order on September 15, 2014,

.

Exhibit 57:

filed under seal pursuant to confidentiality order on September 15, 2014,

.

Exhibit 58:

filed under seal pursuant to confidentiality order on September 15, 2014,



Exhibit 59: ██████████████████████████████████
██████████████████ filed under seal pursuant to
confidentiality order on September 15, 2014, ████
████████████████████████████████████████
████████████████████████████████████

Exhibit 60: █████████████████████████████████
████████████ filed under seal pursuant to confidentiality
order on September 15, 2014, ████████████████
████████████████████████████████████████
████████████████████████████

Exhibit 61: ██████████████████████████████
████████████ filed under seal filed under seal
pursuant to confidentiality order on September 15, 2014,
████████████████████

Exhibit 62: █████████████████████████████████
██████████████████████ filed under
seal pursuant to confidentiality order on September 15,
2014, █████████████████████████████████
████████████████████████████████████████
██████████████

Exhibit 63: ████████████████████████████████
███████████ , filed under seal pursuant to
confidentiality order on September 15, 2014, ███████
████████████████████████████████████████
██████████████████████ .

Exhibit 64: ██████████████████████████████
████████████████████ filed under seal
pursuant to confidentiality order on September 15, 2014,
████████████████████████████████████████
██████████████████████████████

Exhibit 65:  filed under seal pursuant to confidentiality order on September 15, 2014,

12.     Copies of the following are attached as Volume XI of XII, in redacted form, as "Confidential Discovery Material" pursuant to the Second Amended Stipulation and Order Governing Confidentiality of Discovery Material in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), dated December 2, 2010 (District Court Docket Entry No. 591), as authorized by the Honorable Victor Marrero on September 10, 2014 (District Court Docket Entry No. 1319):



Exhibit 66: filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 67: filed under seal pursuant to confidentiality order on September 15, 2014,

Exhibit 68: filed under seal pursuant to confidentiality order on September 15, 2014,



Exhibit 69: ⬛⬛⬛⬛ iled under seal pursuant to confidentiality order on September 15, 2014, ⬛⬛⬛⬛

Exhibit 70: ⬛⬛⬛⬛ , filed under seal pursuant to confidentiality order on September 15, 2014, ⬛⬛⬛⬛ .

Exhibit 71: ⬛⬛⬛⬛ filed under seal pursuant to confidentiality order on September 15, 2014, ⬛⬛⬛⬛ .

13.     Copies of the following are attached as Volume XII of XII, in redacted form, as "Confidential Discovery Material" pursuant to the Second Amended Stipulation and Order Governing Confidentiality of Discovery Material in *Anwar, et al.* v. *Fairfield Greenwich Limited, et al.*, Master File No. 09-cv-0118 (VM), dated December 2, 2010 (District Court Docket Entry No. 591), as authorized by the Honorable Victor Marrero on July 31, 2014 (District Court Docket Entry No. 1291) and September 10, 2014 (District Court Docket Entry No. 1319):

Exhibit 72: ⬛⬛⬛⬛ filed under seal pursuant to confidentiality order on September 15, 2014, ⬛⬛⬛⬛



Exhibit 73: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ filed under seal pursuant to confidentiality order on September 15, 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit 74: ▮▮▮▮▮▮▮ filed under seal pursuant to confidentiality order on September 15, 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit 75: ▮▮▮▮▮▮▮▮▮▮ filed under seal pursuant to confidentiality order on September 15, 2014, ▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit 76: ▮▮▮▮▮▮▮▮▮ filed under seal pursuant to confidentiality order on September 15, 2014, ▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit 77: ███████████████████████████████████,

filed under seal filed under seal pursuant to
confidentiality order on August 1, 2015, ████████████
█████████████

I hereby declare under penalty of perjury that the foregoing is true and

correct.

Dated:   New York, New York
        March 16, 2015

_Walter Rieman_
Walter Rieman

## CERTIFICATE OF SERVICE

I, Gregory F. Laufer, hereby certify that on March 17, 2015, I caused to be served a true and correct copy of MOTION OF DEFENDANTS-PETITIONERS THE CITCO GROUP LTD., ET AL., FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F), CORPORATE DISCLOSURE STATEMENT, PETITION OF DEFENDANTS-PETITIONERS THE CITCO GROUP LTD., ET AL., FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F) and DECLARATION OF WALTER RIEMAN on the following counsel via File Transfer Protocol or email pursuant to an agreement between the parties:

| | |
|---|---|
| David Boies, Esq.<br>Boies, Schiller & Flexner, LLP<br>333 Main Street<br>Armonk, NY 10504<br>T. (914) 749-8200<br>F. (914) 749-8300<br>dboies@bsfllp.com<br><br>David A. Barrett, Esq.<br>Boies, Schiller & Flexner, LLP<br>575 Lexington Avenue<br>New York, NY 10022<br>T. (212) 446-2300<br>F. (212) 446-2350<br>dbarrett@bsfllp.com<br><br>Stuart H. Singer, Esq.<br>Sashi B. Boruchow, Esq.<br>Boies, Schiller & Flexner, LLP<br>401 East Las Olas Boulevard, Suite 1200<br>Fort Lauderdale, FL 33301<br>T. (954) 356-0011<br>F. (954) 356-0022<br>sboruchow@bsfllp.com<br>ssinger@bsfllp.com<br><br>Christopher Lovell, Esq.<br>Victor E. Stewart, Esq. | William R. Maguire<br>Sarah L. Cave<br>Hughes Hubbard & Reed LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>(212) 837-6000<br>maguire@hugheshubbard.com<br>cave@hugheshubbard.com<br><br>*Attorneys for Defendant PricewaterhouseCoopers Accountants N.V.* |

Lovell Stewart Halebian Jacobson LLP
61 Broadway, Suite 501
New York, NY   10006
T. (212) 608-1900
F. (212) 719-4677
clovell@lshllp.com
victornj@ix.netcom.com

Robert C. Finkel, Esq.
James A. Harrod, III, Esq.
Wolf Popper LLP
845 Third Avenue
New York, NY   10022
T. (212) 451-9631
F. (212) 486-2093
rfinkel@wolfpopper.com
jharrod@wolfpopper.com

*Interim Co-Lead Counsel for Plaintiffs*

Emily Nicklin
Timothy A. Duffy
Amy E. Crawford
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL   60654
(312) 862-2000
emily.nicklin@kirkland.com
tim.duffy@kirkland.com
amy.crawford@kirkland.com

*Attorneys for Defendant*
*PricewaterhouseCoopers, LLP*

Dated:  March 17, 2015

Gregory F. Laufer

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
PASHA S. ANWAR, et al.,      :

             Plaintiffs,   :

                      :

                      :

   -against-         :

                      :

FAIRFIELD GREENWICH LIMITED, :
et al.,

                      :

                      :

          Defendants.  :
------------------------------ X

USDC S... ...
DOCUM... ...
ELECTRONICALLY FILED
DOC #: _____ 3 ___
DATE FILED: __3/3/15__

09 Civ. 0118 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

By Decision and Order dated February 22, 2013 ("2013 Decision," Dkt. No. 1052), the Court certified a class comprised of "all shareholders/limited partners in Fairfield Sentry Limited, Fairfield Sigma Limited, Greenwich Sentry, L.P. and Greenwich Sentry Partners L.P. (the 'Funds') as of December 10, 2008 who suffered a net loss of principal invested in the Funds."[1] Anwar v. Fairfield Greenwich Ltd., 289 F.R.D. 105, 110 (S.D.N.Y. 2013). Defendants The Citco

---

[1] Excluded from this class were members whose investments in the Funds were made in the following countries: Switzerland, France, Luxembourg, Israel, Kuwait, Korea, North Korea, Picairn, Tokelau, Mongolia, China, Liechtenstein, Japan, Oman, Taiwan, United Arab Emirates, Qatar, Saudi Arabia, Bosnia, Andorra, San Marino, Namibia, Monaco, Germany and South Africa (collectively, the "Excluded Countries"). Also excluded from the Class definition are the Defendants, and any entity in which the Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, immediate family members, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada), Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Ltd. (collectively, the "Citco Defendants"); and PricewaterhouseCoopers, LLP, and PricewaterhouseCoopers Netherlands Accountants N.V. (collectively, the "PwC Defendants") appealed to the Second Circuit. The Citco and PwC Defendants challenged the Court's certification of a class of investors in the Funds created and managed by the Fairfield Greenwich Group ("FGG"). Specifically, the Citco Defendants argued that Plaintiffs could not prove reliance by common evidence and, therefore, could not satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)"); further, the Citco Defendants argued that plaintiffs failed to meet Rule 23(b)(3)'s superiority requirement with respect to their holder claims. The PwC Defendants argued that the plaintiffs could not satisfy Rule 23(b)(3) because individual issues predominated with respect to the duty of care PwC owed to class members and those members' reliance on PwC audits.

By Summary Order dated June 19, 2014, the Second Circuit vacated the 2013 Decision insofar as it applied to the Citco and PwC Defendants and remanded for consideration of certain questions set forth in the discussion section below. See St.

Stephen's Sch. v. PricewaterhouseCoopers Accountants N.V.,
570 F. App'x 37, 39-40 (2d Cir. 2014). In so holding, the
Second Circuit found that the 2013 Decision "focused
primarily on the claims asserted against FGG" -- claims which
were the subject of a settlement agreement that had the
Court's preliminary approval and was thereafter formally
approved. Id. at 39.

On remand, the Court has reviewed the record of the Citco
and PwC Defendants and finds the requirements of Rule 23(b)
are satisfied. Therefore, the Court certifies the Proposed
Class, subject to the modification excluding certain foreign
investments.

## I.   BACKGROUND

### A. FACTUAL BACKGROUND

Lead plaintiffs AXA Private Management, Pacific West
Health Medical Center Employees Retirement Trust, Harel
Insurance Company Ltd., Martin and Shirley Bach Family Trust,
Natalia Hatgis, Securities & Investment Company Bahrain,
Dawson Bypass Trust, and St. Stephen's School (collectively,
"Plaintiffs"), brought this class action on behalf of
individuals and entities who invested large sums of money in
the Funds created and operated by FGG. The overwhelming
majority of Plaintiffs' money was in turn invested by FGG in
the Ponzi scheme operated by Bernard Madoff ("Madoff") under

the auspices of Bernard L. Madoff Investment Securities, Inc. ("BLMIS"), and for which Madoff was sentenced to 150 years in prison following his guilty plea.   See United States v. Madoff, No. 09 Cr. 0213 (S.D.N.Y. June 29, 2009).

Plaintiffs are suing a number of FGG entities, executives, and other professional service providers, including the Citco and PwC Defendants, who audited, administered, or served as custodians of the Funds.

B. PROCEDURAL BACKGROUND

In the Second Consolidated Amended Complaint (the "SCAC"), filed September 29, 2009, Plaintiffs allege violations of federal securities law and common law tort, breach of contract and quasi-contract causes of action against FGG and associated entities and individuals (the "Fairfield Defendants"),[2] GlobeOp Financial Services, LLC ("GlobeOp"), and the Citco and PwC Defendants. Plaintiffs' allegations are detailed more fully in this Court's prior opinions in this action, Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 354 (S.D.N.Y. 2010) ("Anwar I") and Anwar v.

---

[2]   In addition to FGG, these entities and individuals include Fairfield Greenwich Advisors LCC ("FGA"), Fairfield Greenwich Ltd. ("FGL"), and three wholly-owned FGL subsidiaries: Fairfield Greenwich (Bermuda) Ltd. ("FGBL"), Fairfield Risk Services Ltd. ("FRS"), Fairfield Heathcliff Capital LCC ("FHC"), Walter M. Noel Jr. ("Noel"), Jeffrey H. Tucker ("Tucker"), Andres Piedrahita ("Piedrahita"), Amit Vijayvergiya ("Vijayvergiya"), Daniel E. Lipton ("Lipton"), and Mark McKeefry ("McKeefry").

Fairfield Greenwich Ltd., 728 F. Supp. 2d 372 (S.D.N.Y. 2010)
("Anwar II"). For purposes of this decision, the Court will
focus on the allegations and discovery pertaining to the Citco
and PwC Defendants.

As alleged in the SCAC, Citco served as administrator,
custodian, bank, and depository for the Funds. (SCAC ¶¶ 327,
330.) Additionally, through its Fund Services division, Citco
provided financial services to its fund clients, including
independent pricing of funds portfolio, independent portfolio
verification, and compliance monitoring. (Id. ¶ 326.)
According to the SCAC, however, Citco "undertook
responsibilities beyond that of a typical Fund administrator"
-- including "reconciliation of cash and other balances at
brokers," "independent reconciliation of the Fund's portfolio
holdings," and "calculation of the Net Asset Value and the
Net Asset Value per Share on a monthly basis in accordance
with the Fund Documents." (Id. ¶ 327.) Additionally,
according to the SCAC, Citco was "specifically responsible
for communications with investors," including receiving
subscription documents from and sending investment
confirmations to investors. (Id. ¶ 328.) Citco allegedly
"undertook additional discretionary responsibilities" as
custodian, bank, and depository for Fairfield Sentry and
Fairfield Sigma. (Id. ¶ 330.) Those responsibilities

allegedly included taking "due care . . . in the selection and ongoing appropriate level of monitoring of any . . . subcustodian" appointed by the Fund, and agreeing that securities held by any subcustodian, like BMIS, "shall be recorded in and ascertainable from the books and/or ledgers of the Custodian." (Id. ¶ 330.)

Plaintiffs argue that in providing these financial services, Citco was a fiduciary to Plaintiffs, and that because Citco was aware that investors knew and relied on these services, Citco owed Plaintiffs a duty of care. (Id. ¶¶ 332-33.) For example, the SCAC alleges that, "[t]he NAV, which was to be independently calculated and reported by Citco, was fundamental to Plaintiffs' initial investment decisions, decisions to invest additional funds, and decisions to maintain the investments over time." (Id. ¶ 335.) But, according to the SCAC, Citco was grossly deficient in fulfilling its duties to Plaintiffs, including, but not limited to, failing to take reasonable steps to calculate the Funds' NAV, to independently reconcile the Funds' portfolio holdings with Madoff, and to reconcile information provided by Madoff as the Funds' prime broker with information provided by the Investment Manager. (Id. ¶ 337.)

Further, the SCAC alleges that Citco knowingly provided substantial assistance to the Fairfield Defendants in the

fraud and breaches of fiduciary duty to investors, as well as collected unearned fees calculated on the basis of fictitious profits reported by Madoff. (Id. ¶ 341-43.)

At the Motion to Dismiss stage, the Court granted Citco's motion to dismiss Plaintiffs' (1) third-party beneficiary breach of contract claim as it relates to certain contracts entered into with the Custodians; (2) claims against two individual defendants; (3) breach of fiduciary duty claims against Citco Group Ltd. and Citco Fund Services (Bermuda) Ltd.; and (4) negligence and gross negligence claims against Citco Fund Services (Bermuda) and the Custodians. Anwar II, 728 F. Supp. 2d at 422. In all other respects, the Court denied the Citco Defendants' Motion to Dismiss.

As to the PwC Defendants, Plaintiffs allege that PwC failed to audit the Funds according to both United States and International standards and misrepresented the financial condition of the Funds. According to the SCAC, the PwC Defendants "reaffirmed that the financial information in the certified financial statements, both past and present, was prepared in accordance with GAAP, GAAS, International Accounting Standards, and all applicable accounting standards, and that the statements were an accurate representation of the financial condition of the Funds." (SCAC ¶ 260.) Further, the SCAC alleges that, "PwC expressly

undertook to conduct 'tests of physical existence, ownership and recorded value of selected assets', 'tests of selected recorded transactions with documentation required by law and good business practice', and 'direct confirmation with selected third parties (e.g., banks, customers, suppliers) of amounts due to or by them and other relevant information'" but that "PwC misrepresented that it performed these tests, when it did not, and fraudulently concealed its misconduct from Plaintiffs, thereby preventing Plaintiffs from discovering that the Funds' financial statements were false and misleading." (Id. ¶ 260.)

The SCAC alleges that, despite meeting with Madoff in connection to PwC's audits, PwC accepted at face value Madoff's representations that "99% of all trades are electronic, therefore records are updated daily and all reconciliations are performed daily (automated process)." (Id. ¶ 272.) According to the SCAC, PwC "did not perform any independent confirmation or analysis of the purported trades, or even review the purported electronic confirmations, despite the fact that it knew that Madoff did not provide electronic confirmations to the Funds that he managed, and instead gave them delayed, paper confirmation of supposed trades." (Id. ¶ 272.) The SCAC continues by alleging numerous other instances where PwC accepted Madoff's representations

-- such as representations regarding the lack of trader intervention, and representations of the value of assets under management -- without investigating or seeking to confirm those representations with documentary evidence. (See, e.g., id. ¶¶ 273-74.)

The SCAC alleges that PwC breached duties owed to Plaintiffs. Specifically, Plaintiffs claim that PwC owed duties to shareholders of Fairfield Sentry and Fairfield Sigma because PwC knew -- as supported by internal reports, marketing plans, and engagement letters -- that shareholders and potential shareholders would rely on the audit reports in acquiring and holding shares of the Funds. (Id. ¶¶ 275-79.) The SCAC claims that under various auditing standards, as well as PwC's own Audit Plan, that PwC was required to exercise due professional care, which necessarily included obtaining independent verification that the funds' assets existed. (Id. ¶¶ 280-303.) The SCAC alleges that PwC failed in its obligation to obtain reasonable assurance of the purported Funds' assets or the existence of the transactions which constituted the split-strike conversion strategy. (Id. ¶¶ 304-311.) In so doing, the SCAC contends that PwC breached its duties as the independent auditor of the Funds. (Id. ¶ 315.)

Not only did PwC fail to adequately investigate and confirm Madoffs' claims, according to the SCAC, but PwC also made misrepresentations regarding the funds that constituted substantial assistance to Fairfield Defendants' fraud and breaches of fiduciary duty. (Id. ¶ 316.) The SCAC alleges that PwC knew that Madoff was responsible for managing, trading and holding the Funds' assets, but failed to conduct audits in accordance with various accounting standards. (Id.) The audit reports, in turn, according to the SCAC, "misrepresented that PwC had conducted the audits in compliance with GAAS and ISA and misrepresented that the Funds' financial statements set out the true financial condition of the Funds." (Id.) Additionally, the SCAC alleges that PwC was willfully blind to Fairfield Defendants' lack of monitoring or verifying the investments purportedly made by Madoff. (Id. ¶ 317.)

At the Motion to Dismiss stage, the Court found that Plaintiffs did not establish a strong inference of conscious recklessness necessary for federal securities fraud claims, and the Court also dismissed Plaintiffs' gross negligence, third-party beneficiary breach of contract, unjust enrichment, and aiding and abetting a breach of fiduciary duty and fraud claims. Anwar II, 728 F. Supp. 2d at 449-62.

The Court, however, denied the PwC Defendants' motion seeking to dismiss negligence and negligent misrepresentation claims.

Plaintiffs then moved, pursuant to Rule 23, to certify a class (the "Class" or "Proposed Class") comprised of:

> all shareholders/limited partners in Fairfield Sentry Limited, Fairfield Sigma Limited, Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P. (the "Funds") as of December 10, 2008 who suffered a net loss of principal invested in the Funds.

(Pls.' Mem. of Law in Supp. of Mot. for Class Cert. at 1.)[3]

By Decision and Order dated February 25, 2013, this Court certified the Plaintiffs' proposed class, with the exclusion of members whose investments were made in certain countries. Anwar v. Fairfield Greenwich Ltd., 289 F.R.D. at 110. In certifying the class, the Court found that Plaintiffs had satisfied all four of the requirements of Rule 23(a) and the relevant portions of Rule 23(b)(3) necessary for class certification. See In re Livent Noteholders Sec. Litig., 210 F.R.D. 512, 514 (S.D.N.Y. 2002) ("Livent"). This Court's class certification order applied to FGG and associated

---

[3]  Excluded from the Class definition are the Defendants, and any entity in which the Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, immediate family members, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

entities and individuals, GlopeOp Financial Services, LLC, and the Citco and PwC Defendants. 289 F.R.D. at 109.

On appeal, the Second Circuit vacated the 2013 Decision insofar as it applied to the Citco Defendants and PwC Defendants and remanded for consideration as to "how common evidence can show (1) the existence of a duty of care applicable to the class either under the standard identified in Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 493 N.Y.S.2d 435, or otherwise; or (2) reliance by the class on alleged misrepresentations by (a) the Citco Defendants and (b) the PwC Defendants, either under the presumption identified in Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972), or otherwise." St. Stephen's Sch., 570 F. App'x at 39-40 (footnotes omitted).

On remand, this Court will only revisit the Rule 23(b) predominance requirement as it relates to the PwC and Citco defendants. The Court will assume familiarity with, and explicitly reaffirms and adopts, its earlier factual findings pertaining to Rule 23(a) and the superiority requirement of Rule 23(b) as applied to the PwC and Citco defendants. The Second Circuit did not direct this Court to consider those requirements on remand, so the Court will not discuss them here and finds its earlier factual findings regarding Rule

23(a) and the superiority requirement of Rule 23(b) sufficient for class certification in the instant review.

The Court finds that the Proposed Class, modified as indicated (see supra n. 1), satisfies all of the requirements of Rule 23(a) and the pertinent requirements of Rule 23(b). This Class is subject to further adjustment or decertification as warranted as facts develop.

## II.   DISCUSSION

### A. STANDARD OF REVIEW

To certify the Proposed Class, the Plaintiffs must satisfy all four of the requirements of Rule 23(a) and the reevlant portions of Rule 23(b)(3). To satisfy the Rule 23(a) prerequisites, Plaintiffs must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires that Plaintiffs demonstrate that common questions of law or fact "predominate over any questions affecting individual members" and that maintaining a class action is "superior" to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3).

"Rule 23(b)(3), however, does <u>not</u> require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions <u>predominate</u> over any questions affecting only individual class members." <u>Amgen Inc. v. Connecticut Ret. Plans & Trust Funds</u>, 133 S. Ct. 1184, 1196 (2013) (internal quotation marks, alterations, and citations omitted). Importantly, a trial court should not "put the cart before the horse" by essentially requiring a plaintiff to "first establish that it will win the fray." <u>Id.</u> at 1191. Instead, a Rule 23(b)(3) certification ruling is to "select the method best suited to adjudication of the controversy fairly and efficiently." <u>Id.</u> (internal quotation marks and alterations omitted).

Additionally, trial courts are given substantial discretion in determining whether to grant class certification because "'the district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted.'" <u>In re Nigeria Charter Flights Contract Litig.</u>, 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (<u>quoting</u> <u>In re Sumitomo Copper Litig.</u>, 262 F.3d 134, 139 (2d Cir. 2001) ("<u>Sumitomo III</u>") (alteration in original)). The Second Circuit has directed courts to adopt

a liberal interpretation of Rule 23 in order to maximize the benefits to private parties and, in cases that involve alleged manipulation of public markets, to maximize the benefits to the public provided by class actions. See In re Sumitomo Copper Litig., 182 F.R.D. 85, 88-89 (S.D.N.Y. 1998) ("Sumitomo I"); see also In re Sumitomo Copper Litig., 194 F.R.D. 480, 481 (S.D.N.Y. 2000) ("Sumitomo II"). As the Second Circuit stated in Green v. Wolf Corp., "'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" 406 F.2d 291, 298 (2d Cir. 1968) (quoting Esplin v. Hirshi, 402 F.2d 94, 99 (10th Cir. 1968)).

As discussed supra, this Court has already determined that the Rule 23(a) and the relevant Rule 23(b) requirements -- apart from predominance -- have been satisfied by Plaintiffs, and thus will limit the current inquiry to the Rule 23(b)(3) predominance requirement as applicable to the PwC and Citco Defendants.

B. DUTY OF CARE

Under New York law, accountants owe a duty of care to (a) parties with whom they have contracted, and (b) third parties with whom they have a "relationship so close as to approach that of privity." BHC Interim Funding, L.P. v.

15

Finantra Capital, Inc., 283 F. Supp. 2d 968, 984 (S.D.N.Y. 2003) (quoting Parrott v. Coopers & Lybrand, 95 N.Y.2d 479, 483 (2000)). Here, Plaintiffs do not contend that they contracted directly with either the PwC or Citco Defendants, but rather that they are owed a duty of care because they had a "relationship so close as to approach that of privity." Parrott, 95 N.Y.2d at 483. For accountants to be held liable in negligence to noncontractual parties "who rely to their detriment on inaccurate financial reports," the defendant must have been (1) "aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 551 (1985). Although the standard initially applied to accountants, the New York Court of Appeals has stated that the Credit Alliance requirements "do not apply to accountants only." Sykes v. RFD Third Ave. 1 Associates, LLC, 15 N.Y.3d 370, 373 (2010).

On the particular facts before the Court, common evidence can show the existence of such duty of care by both the PwC and Citco Defendants to the Proposed Class. First,

common evidence can show that Defendants were "aware that the financial reports were to be used for a particular purpose or purposes." Credit Alliance, 65 N.Y.2d at 551. To show this requisite awareness, Plaintiffs must demonstrate that the particular use of the financial reports "was not merely one possibility among many, but the 'end and aim of the transaction.'" Id. at 549. See also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 592 F. Supp. 2d 608, 641 (S.D.N.Y. 2009) (finding that the first prong of the Credit Alliance test was satisfied when Citco, also a defendant there, had indicated in a procedure manual that "[t]he net asset value is an important indicator for a fund" and that "[s]hareholders and partners will make decisions to invest or redeem based on the net asset value"); Glanzer v. Shepard, 233 N.Y. 236, 239 (1922) (finding that the law imposed a duty on defendant who contracted with seller to weigh goods before sale toward third party buyer when defendant had, among other factors, "held themselves out to the public as skilled and careful in their calling," "knew that the [goods] had been sold, and that on the faith of their certificate payment would be made," and "sent a copy to the plaintiffs for the very purpose of inducing action"); Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 385 (1992) (finding that Credit

<u>Alliance</u> criteria "clearly support the imposition of liability" when the "end and aim" of an opinion letter was to provide a third party with the "financial information it required").

The Court now explicitly finds that Plaintiffs can show sufficient common evidence to demonstrate that the transmission of PwC's audit opinions to the Funds' investors was the "end and aim of the transaction." The record includes emails from FGG employees directly to PwC requesting Fund audits as soon as possible because "investors have been requesting the audits for the past couple months." (Pls.' Supp. Mem. of Law in Supp. of Mot. for Class Cert. ("Pls.' Supp. Mot.") Ex. 32. See also Pls.' Supp. Mot. Ex. 33 (email from the FGG Chief Financial Officer to PwC noting that their "flagship funds" have "[thousands] of investors who will be asking for the financials ")). Other emails show that PwC was informed of, and even directly involved in, the process of distributing audit statements to shareholders. (Pls.' Supp. Mot. Exs. 35, 36.) Further, audit plans to the investment manager indicated that the first of three audit objectives was to provide "[i]ndependent opinions and reports that provide assurance on financial information released by the funds" specifically "[f]or shareholders and other stakeholders." (Pls.' Supp. Mot. Ex. 2.)

The Court, at the Motion to Dismiss stage, found that the PwC Defendants "failed to present any compelling argument that the alleged facts fall short of leading to the plausible inference that they were aware that the financial reports they produced for the Funds were to be used for the _particular_ purpose of evaluating investments in the Funds." _Anwar II_, 728 F. Supp. 2d at 455 (emphasis added).[4] At the class certification stage, the Court again finds that the PwC Defendants have not shown sufficient evidence to rebut this inference.

Similarly, as to the Citco Defendants, Plaintiffs have shown sufficient common evidence that the NAV statements, among other financial statements, were to be used by investors

---

[4] Among the allegations in the SCAC that supported the Court's finding were: SCAC ¶ 442 ("[The] PwC [Member Firms] ... kn[ew] that Plaintiffs would use and rely upon [their] representations for the particular purpose of determining whether to hold their assets in the Funds and whether to purchase additional interests in the Funds."); _id._ ¶ 277 ("[The] PwC [Member Firms] acknowledged in the Audit Plan that [their] audit engagement involved delivering to shareholders and other stakeholders in the funds independent opinions and reports that provide assurance on financial information released by the Funds." (citation and quotation marks omitted). The Court also noted: "A finding of the PwC Member Firms' awareness of the financial reports' particular purpose of evaluating investments in the Funds is further supported by Plaintiffs' allegation that the PwC Member Firms 'knew that there was no independent market mechanism or evidence to value the shares and limited partnership interests in the Funds, and that there was no other independently-verified third party financial information about the Funds besides [the PwC Member Firms'] audited financial statements.'" _Anwar II_, 728 F. Supp. 2d at 455.

making investment decisions. (See, e.g., Pls.' Supp. Mot. Ex. 53.)

Second, common evidence can show that Fund investors are "known parties" who were intended to rely on audits and other financial statements. Credit Alliance, 65 N.Y.2d at 551. As this Court has stated before, the "known parties" prong "does not require an auditor know a 'particular' third party by name." Anwar II, 728 F. Supp. 2d at 456. "Rather it recognizes that while an accountant does not owe a duty to members of an 'indeterminate class,' Ultramares Corp. v. Touche, 255 N.Y. 170, 174 (1931), an accountant owes a duty to '[members] of a settled and particularized class among the members of which the report would be circulated. . . .' White v. Guarente, 43 N.Y.2d 356, 401 (1977)." Id. As the Court noted in Anwar IV, the "known party" prong of Credit Alliance "cannot be satisfied when the claim pertains to inducement of an initial investment," as "Defendants, who were not in privity with Plaintiffs, cannot owe a duty to prospective investors who were unknown to Defendants at the time they made the alleged misrepresentations." Anwar v. Fairfield Greenwich Ltd., 884 F. Supp. 2d 92, 97 (S.D.N.Y. 2012) ("Anwar IV"). Accordingly, this Court dismissed without prejudice the Plaintiffs' negligence-based initial investment claims against PwC. Id.

Plaintiffs' remaining claims against PwC now concern existing Fund investors who made subsequent investments.[5] (Pls.' Supp. Mot. at 10.) Plaintiffs have presented sufficient common evidence to show that PwC knew the identities of investors who made subsequent investments. For example, the Record shows PwC reviewed and audited documents containing investors' names, purchases and redemptions. (See Pls.' Supp. Mot. Exs. 39-43.)[6] Indeed, part of PwC's procedure was to audit the "client's detailed shareholder listing" and "verify" that the share register "contains the names of all the investors." (See, e.g., Pls.' Supp. Mot. Ex. 45.)

Plaintiffs' claims against the Citco Defendants, however, still include both initial investments and

---

[5] In Anwar IV, the Court discussed the implication of Stephenson v. PricewaterhouseCoopers, LLP, 482 F. App'x 618, 620 (2d Cir. 2012) and Meridian Horizon Fund, LP v. KPMG (Cayman) (In re Tremont Sec. Law), 487 F. App'x 636, 642 (2d Cir. 2012) ("Tremont"). The Court found that Stephenson and Tremont did not preclude satisfaction of the "known party" prong as the plaintiffs in Stephenson did not appear to have made subsequent investments, and the Second Circuit did not discuss plaintiffs' subsequent investments in its Tremont Summary Order.

[6] The PwC Defendants argue that some of these Exhibits show only "some nominal owners who bought or sold during a given period" or that, despite emails indicating that a shareholder register should be made available to auditors, there is no document showing that such a register was actually obtained. (See Opp. Of PricewaterhouseCoopers Accountants N.V. to Pls.' Supp. Mot. for Class Cert. ("PwC Opp. Mot.") at 2-3.) However, the Court has determined that the Plaintiffs' evidence is sufficient at the class certification stage. Insofar as warranted, such factual disputes can continue to be litigated at the summary judgment stage or thereafter.

subsequent investments because Citco allegedly received subscription documents from initial investors and provided financial statements to subsequent investors. (See, e.g., Pls.' Supp. Mot. Exs. 51, 52.) Among those forms were confirmations and monthly statements, on Citco's letterhead, containing NAV-based valuations that the Citco Administrators had calculated. (See Pls.' Supp. Mot. Ex. 3.)

Third, common evidence can show "some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." Credit Alliance, 65 N.Y.2d at 551. Such linking conduct does not require actual face-to-face or similar contact between an auditor and a third party.[7] Anwar II, 728 F. Supp. 2d at 456. See also Dorking Genetics v. United States, 76 F.3d 1261, 1270 (2d Cir. 1996) (stating that "[w]e do not think that the [New York] Court of Appeals intended the term 'linking conduct' to be read so narrowly" and interpreting Credit Alliance to permit an action "even if the plaintiff had never interacted directly with the defendant"). As this Court has stated before, both in Anwar

_____

[7] In Anwar IV, the Court also distinguished the facts before it from those in Tremont. The Court noted that Plaintiffs here allege "that PwC's 'Audit Plan' contained an acknowledgment that the purpose of their engagement was to deliver information directly to the Funds' investors." Anwar IV, 884 F. Supp. 2d at 97.

IV and in its order denying reconsideration of Anwar II, the
"Linking Conduct" requirement can be satisfied "if auditors
recognized that their reports would be communicated directly
to shareholders, who might thus rely on those financial
statements to make investment decisions." Anwar IV, 884 F.
Supp. 2d at 98 (quoting Anwar v. Fairfield Greenwich Ltd.,
800 F. Supp. 2d 571, 573 (S.D.N.Y. 2011).[8] See also SEC
Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 75 (2d
Cir. 2000) (indicating that linking conduct could be
established if the accountant had provided its audit report
directly to plaintiff, or mentioned plaintiff in the audit
engagement letter with client, or had shown awareness that
the audit would benefit primarily the plaintiff); Dinerstein
v. Anchin, Block & Anchin, LLP, 838 N.Y.S.2d 46, 47 (2007)
(denying defendant's motion for summary judgment when
defendant "admit[ted] it knew that its audit reports, which
were addressed to 'the Stockholders and Directors . . .' were
to be used by . . . stockholder and directors for the
particular purpose of 'managing and overseeing'"); Cromer
Fin. Ltd. v. Berger, No. 00 Civ. 2498, 2001 WL 1112548, at *5

---

[8] Evidence uncovered during discovery might determine whether
Plaintiffs ultimately have proved all the elements of the Credit
Alliance test, and Defendants are free to raise Stephenson and
Tremont at the motion for summary judgment phase, when their
argument may benefit from a fuller record. See Anwar IV, 884 F.
Supp. 2d at 98.

(S.D.N.Y. Sept. 19, 2001) ("[Defendant's] audit reports, addressed 'to the shareholders,' constitute 'substantial communication' between [defendant] and the plaintiff-shareholders sufficient to satisfy the 'linking conduct' requirement discussed.").

Similarly, here, the linking conduct requirement is satisfied as to PwC. Its audit opinions were addressed to existing "shareholders." (Pls.' Supp. Mot. at 11.) Significantly, the Record makes clear that PwC recognized or should have recognized that their audits were designed or served primarily to benefit the known investors. (See, e.g., Ex. 38 at 3 (letter from FGG to PwC discussing benefits to the "users of the financial statements -- [the] investors"); see also Ex. 2.)

Likewise as to Citco, Plaintiffs have provided common evidence showing Citco's understanding that investors relied on Citco's NAV statements. For example, Citco's internal procedures manual states explicitly that "[s]hareholders and partners will make decisions to invest or redeem based on the net asset value," and for that reason it is "very important" that the calculated net asset value is "correct," "reliable," and "timely." (Pls.' Supp. Mot. Ex. 53.)

C. RELIANCE

The second basis for the Second Circuit remand was for this Court to indicate how common evidence can show reliance by the class on alleged misrepresentations by the Citco and PwC Defendants, either under the Affiliated Ute presumption or otherwise. See St. Stephen's Sch., 570 F. App'x at 40. When this Court first considered Plaintiffs' motion for class certification, it concluded that common questions of law and fact clearly predominate over any individual issues, even absent a "fraud created the market" theory or the Affiliated Ute presumption of reliance. Anwar v. Fairfield Greenwich Ltd., 289 F.R.D. at 113. On remand, the Court again finds that common evidence can show reliance by the class on alleged misrepresentations by both the Citco and PwC defendants.

1. Common Evidence Can Show Reliance by the Class

The Court "cannot -- and does not -- presume, as a matter of law, that the element of reliance is satisfied for each putative class member." Ge Dandong v. Pinnacle Performance Ltd., No. 10 Civ. 8086 JMF, 2013 WL 5658790, at *11 (S.D.N.Y. Oct. 17, 2013). Instead, courts can conclude, "based on the evidence in the record at this stage of the proceedings, that a reasonable factfinder could conclude beyond [sic] a preponderance of the evidence that each individual plaintiff relied on the defendants' uniform representations." Id.

(internal quotation marks and alterations omitted). Where
"reliance is too individualized to admit of common proof,"
class certification is inappropriate. In re U.S. Foodservice
Inc. Pricing Litig., 729 F.3d 108, 119 (2d Cir. 2013) cert.
denied sub nom. U.S. Foods, Inc. v. Catholic Healthcare W.,
134 S. Ct. 1938 (2014). However, "the fact that class members
will show causation by establishing reliance on a defendant's
misrepresentations . . . does not place fraud-based claims
entirely beyond the reach of Rule 23, provided that
individualized issues will not predominate." Id.

Courts in this District have used this standard to show
that plaintiffs would "not have purchased a product but for
a defendant's uniform misrepresentations and omissions." Ge
Dandong, 2013 WL 5658790, at *9. And "in the context of a
financial transaction -- which does not usually implicate the
same type or degree of personal idiosyncratic choice as does
a consumer purchase -- payment alone may constitute
circumstantial proof of reliance upon a financial
representation." Id. (internal quotation marks omitted). See
also In re U.S. Foodservice, 729 F.3d at 119-20 ("[P]ayment,
as we have said, may constitute circumstantial proof of
reliance upon a financial representation" (internal quotation
marks omitted)).

Here, as in In re U.S. Foodservice, the evidence in the
record "does not raise the concern of issues of individual
knowledge predominating." Id. at 121 (quotation marks
omitted). The record does not contain evidence suggesting
"actual individual knowledge on the part of a specific
customer." Id. (internal quotation marks omitted). See also
Pub. Emps.' Ret. Sys. Of Miss v. Merrill Lynch & Co., 277
F.R.D. 97, 119 (S.D.N.Y. 2011) ("Sheer conjecture that class
members 'must have' discovered [the misrepresentations] is
insufficient    to    defeat    Plaintiff's    showing    of
predominance.").

Plaintiffs have demonstrated that common evidence can
show reliance for the misrepresentation claims against the
PwC Defendants. Plaintiffs claim that the audit reports
misrepresented the value of the Funds' assets and that PwC
had verified these facts through proper auditing processes.
(See Pls.' Supp. Mot. at 22.) Moreover, Plaintiffs have
provided numerous deposition transcripts and declarations in
which investors have testified that they relied on the
financial statements and audits in making their investment
decisions. (See Pls.' Supp. Mot. Exs. 54-61, 67, 68, 71.)
Further, as in Ge Dandong, payment constitutes circumstantial
proof of reliance upon the representations in the audit
reports. Here, investors chose to invest and continued to

make subsequent investments after being provided with supposedly "clean" audit statements. Plaintiffs' expert opined that "[a] rational investor would not invest money in a fund that did not have an audit opinion from a recognized accounting firm made in accordance with professional standards." (Pls.' Supp. Mot. Ex. 74 at 13-14.)

Plaintiffs have also demonstrated that common evidence can show reliance on the NAV statements for the remaining claims against the Citco Defendants. Again, Plaintiffs provide numerous declarations and deposition transcripts from investors claiming that in deciding to purchase or hold investments in the Funds, they relied on the calculations and representations in the NAV statements. (See Pls.' Supp. Mot. Exs. 54, 55, 56, 57, 58, 59, 60, 72.)

Further, it is clear that common issues predominate over any individual issues. As this Court stated in its initial class certification decision, "even assuming Defendants' claims that certain 'communications to class members may not have been uniform, they allegedly were uniformly misleading. The variations are therefore immaterial and will not defeat class certification.' Bresson v. Thomson McKinnon Sec. Inc., 118 F.R.D. 339, 343 (S.D.N.Y. 1988)." 289 F.R.D. at 113. Further, even if some individual plaintiffs have stated that they did not receive or read audit reports or NAV statements

(see, e.g., Citco Defs.' Memo. of Law in Opp. to Pls.' Mot.
for Class Cert. ("Citco Opp. Mot.") at 5, 7; PwC Opp. Mot. at
21), this does not preclude class certification, which
requires that common issues predominate over individual
issues. Individual issues can still exist beyond the class
certification stage, and the Court can address those at a
later stage. See, e.g., Brown v. Kelly, 609 F.3d 467, 483 (2d
Cir. 2010) ("We acknowledge that the district court will be
required to make individualized inquiries with respect to
some of the plaintiffs and some of the claims. We conclude,
however, that it was within the district court's discretion
to find that common issues predominated.").

> 2. Affiliated Ute Presumption Applies to Plaintiffs'
>    Federal Securities Claims Against Citco

The Court also finds that the Affiliated Ute presumption
further supports its holding as it relates to the federal
securities claims Plaintiffs assert against the Citco
Defendants. The Affiliated Ute rebuttable presumption of
reliance applies "if there is an omission of a material fact
by one with a duty to disclose" such that "the investor to
whom the duty was owed need not provide specific proof of
reliance." Stoneridge Inv. Partners, LLC v. Scientific
Atlanta, 552 U.S. 148, 159 (2008). A fact is material if there
is "a substantial likelihood that the disclosure of the

29

omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." Harkavy v. Apparel Indus., Inc., 571 F.2d 737, 741 (2d Cir. 1978).

Courts in this District have found consistently that the Affiliated Ute presumption applies only to federal securities laws, but is "not appropriate in the common law context." Int'l Fund Mgmt. S.A. v. Citigroup Inc., 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011) (collecting cases). As such, the Court will address the Affiliated Ute presumption only as it applies to the federal securities claims asserted by Plaintiffs against Citco Defendants.

As to such claims, the Citco Defendants argue that Affiliated Ute is inapposite because Plaintiffs' claims turn predominately on alleged misrepresentations rather than omissions. (Citco Opp. Mot. at 11.) Indeed, courts generally apply the presumption "primarily" to omission claims. Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc., 412 F.3d 103, 109 n.5 (2d Cir. 2005). See also In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215 (D.C. Cir. 2010) (declining to apply the presumption when the "gravamen of the [plaintiffs'] complaint" consisted of affirmative misrepresentations).

Courts in this District, however, have described this approach as a "flexible and practical approach" that considers whether a case "primarily involv[es] omissions where reliance would be difficult to prove because Plaintiffs' claim is based on a negative." In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2010 WL 2541166, at *26 (S.D.N.Y. June 10, 2010). The Supreme Court explained these evidentiary concerns in Basic Inc. v. Levinson, noting that "[r]equiring a plaintiff to show a speculative state of facts, i.e., how he would have acted if omitted material information had been disclosed" would "place an unnecessarily unrealistic evidentiary burden" on the plaintiff. 485 U.S. 224, 245 (1988). As such, "the theory behind the Affiliated Ute presumption -- that, when material information is concealed, plaintiffs should only have to prove that 'a reasonable investor might have considered the omitted facts important in the making of [her] investment decision' -- is not undermined simply because a defendant makes misstatements at the same time it omits material information." Fogarazzao v. Lehman Bros., 232 F.R.D. 176, 186 (S.D.N.Y. 2005) (alteration in original).

The Citco Defendants here make arguments similar to those advanced by the defendants in In re Beacon Associates Litigation, in which one defendant provided research and

advice about investment managers to a co-defendant investment advising company as well as to a co-defendant who operated a fund investing in Madoff and BLMIS. See 282 F.R.D. 315 (S.D.N.Y. 2012). In Beacon, the court determined that common questions were "central" to the claims against those defendants, when "[a]t the heart of Plaintiffs' claims against both sets of defendants is their assertion that they withheld the same material information from all of their clients or investors: namely, that neither they nor [a third defendant] were performing due diligence on Madoff's operations any longer." Id. at 327. Further, the Beacon court applied the Affiliated Ute presumption of reliance after rejecting defendants' argument that the "proposed representatives are subject to unique defenses" because the class representatives testified in their depositions that they "did not actually read or rely upon the [defendant's offering memoranda] when they chose to invest in the [fund], and/or did not decide to invest in the [fund] on the basis of [defendant's] advice." Id. at 328. The Beacon court noted that the disclosure obligations also ran to Plaintiffs' agents, and that evidence that some of the proposed class representatives did not read the offering memoranda or rely on the defendants' investment advice does not relieve

defendants of disclosure duties towards these plaintiffs. <u>See</u> <u>id.</u> at 329.

Similarly, in <u>Cromer Fin. Ltd. v. Berger</u>, 205 F.R.D. 113 (S.D.N.Y. 2001), the court applied a presumption of reliance to misrepresentations in NAV statements relating to an offshore investment fund. There, the Fund's administrator and auditor argued that the market for Fund shares was not "open" or "developed" and thus not entitled to a <u>Basic</u> presumption of reliance. <u>Id.</u> at 130. The court noted, however, that the "principles supporting the application of a rebuttable presumption in <u>Basic</u> . . . are not that the market need be 'open' and 'developed' <u>per se</u>, but that those features are typical of markets where share price 'reflects all publicly available information, and, hence, any material misrepresentations." <u>Id.</u> Turning to the facts, the <u>Cromer</u> court noted that "an accurate audit would have had an immediate impact on . . . calculation of the NAV," and "the fraudulent scheme alleged here depended upon a regular recalculation of the NAV at an inflated value." <u>Id.</u> at 131.

Here, among the material omissions Plaintiffs allege, and support with common evidence, are that Citco Defendants did not disclose that: (1) "its internal auditors had grave doubts about the veracity of the Funds' financial information and whether the Funds' assets existed"; (2)"it was not

33

following its own, or industry-standard procedures, but was basing the NAV solely on unverified information from Madoff, never reconciling that information with an independent source"; (3) its attempts to verify that the Funds' assets existed failed due to Madoff's lack of cooperation in meetings with Citco"; (4) "it was doing nothing to supervise Madoff as Citco's sub-custodian"; and (5) "Fairfield Sentry was on Citco's internal 'Watch List' as a 'high risk fund.'" (See Pls.' Supp. Mot. at 18.) The omissions alleged here are common to all Plaintiffs; none of these Plaintiffs were made aware of the auditors' doubts, the failure to reconcile information used to calculate NAV as required by internal and industry-standard procedures, the break-down of meetings with Madoff, or of Fairfield Sentry's placement on Citco's "Watch List."[9]

The Citco Defendants argue that "[l]abeling these items as omissions is just another way of saying that Citco's representations about the Funds' NAV did not accurately reflect the Funds' assets." (Citco Opp. Mot. at 12.) The Court is not persuaded by the Citco Defendants' semantic argument. Instead, as in Beacon, Plaintiffs have provided evidence that the Citco Defendants "withheld the same material information from all of their clients or investors: namely, that neither

─────────────────

[9] Plaintiffs provide common evidence in the record to support each of these omissions. See Pls.' Supp. Mot. at 3-5.

they nor [another party] were performing due diligence on Madoff's operations any longer." Beacon, 282 F.R.D. at 327.

Once plaintiffs have successfully invoked the Affiliated Ute presumption, the burden shifts to defendants to rebut it by demonstrating that the plaintiffs did not in fact rely upon the omission when they made their investment decisions. DuPont v. Brady, 828 F.2d 75 (2d Cir. 1987). In order to meet this burden, defendants must prove, by a preponderance of the evidence, that disclosure of the information omitted would not have altered the plaintiffs' investment decision. See id. at 78. Here, as in Cromer, "[i]t is difficult to imagine an investor putting money into any fund without relying on the integrity of the process for calculating the fund's NAV, as supported by auditor review." 205 F.R.D. at 131. And similarly, "the theory advanced by the plaintiffs in this case also presumes that investors rely on the integrity of a process -- namely, the processes by which the NAV of a private fund is determined and then confirmed by that fund's auditor." Id.

Accordingly, at this stage of class certification in this action, both common evidence and the Affiliated Ute presumption are sufficient to show reliance as to Plaintiffs' federal securities claims against the Citco Defendants.

## III. ORDER

For the reasons discussed above, it is hereby:

**ORDERED** that the motion (Docket No. 775) of lead plaintiffs AXA Private Management, Pacific West Health Medical Center Employees Retirement Trust, Harel Insurance Company Ltd., Martin and Shirley Bach Family Trust, Natalia Hatgis, Securities & Investment Company Bahrain, Dawson Bypass Trust, and St. Stephen's School for class certification of their remaining claims against defendants The Citco Group Ltd., Citco Fund Services (Europe) B.V., Citco (Canada), Inc., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Fund Services (Bermuda) Ltd. (collectively, the "Citco Defendants"); and PricewaterhouseCoopers, LLP, and PricewaterhouseCoopers Netherlands Accountants N.V. (collectively, the "PwC Defendants") pursuant to Federal Rule of Civil Procedure 23 is **GRANTED** as modified herein.

**SO ORDERED.**

Dated: New York, New York
       3 March 2015

VICTOR MARRERO
U.S.D.J.

36